---

## Case No. 5,427.

### GILL v. PATTEN.

[1 Cranch, C. C. 114.][1]

Circuit Court, District of Columbia.   March Term, 1803.

---

## Case No. 5,428.

### GILL v. PATTEN.

[1 Cranch, C. C. 465.][1]

Circuit Court, District of Columbia.   Nov. Term, 1807.

EJECTMENT—MESNE PROFITS AND IMPROVEMENTS.

Permanent and useful improvements made upon the land, may be given in evidence in mitigation of damages, in an action of trespass for mesne profits, brought after recovery in ejectment.

[Cited in Stark v. Starr, Case No. 13,307.]

The question submitted to the court, in this case was, "Whether valuable and permanently useful improvements made upon the land, may be given in evidence in mitigation of damages by the defendant in an action of trespass for mesne profits, brought after a recovery in ejectment."

F. L. Lee, for defendant, submitted the following written argument:

May improvements be recouped in an action of trespass for mesne profits? 1st. Permanently useful improvements were recouped in the action of assize of novel disseisin

at common law. 2d. They were recouped in the action of trespass with continuando when brought after an entry. 3d. They may, and for particular reasons ought, to be recouped in the same action when brought after a recovery in ejectment.

1. When a man has been disseized of his estate and kept out of possession, he is or may be injured in three respects; by the loss of his land, by the loss of the profits, and by injury done to the estate itself. For all these injuries he ought to be indemnified; but they do not all happen in every case. For this reason the remedies are various, so as to suit each case. Illustration: When the ancestor was disseized, and nothing has descended to the heir but the mere right to the land, he may recover the land in the writ of entry, but he is entitled to no damages, because the waste and the disseisin done in the lifetime of the ancestor have died with him, and the waste done since is no trespass to the heir who has not entered; and as to the profits, the wrongful person was permitted to keep them to pay the feudal services, &c. 3 Bl. Comm. c. 10, pp. 187, 188. The heir having sustained but one of the before-mentioned injuries, the loss of the land, has a specific remedy to recover that, and nothing else. If the ancestor died seized, and a stranger abated, the heir might recover the land in the writ of mort d'ancestor, but no damages, for the reasons before mentioned. 3 Bl. Comm. c. 10, p. 185; 2 Inst. 286. But if the heir had entered, and a stranger put him out of possession, all the before-mentioned injuries were sustained; and therefore for this new disseisin he might recover the land and damages in the writ of assize of novel disseisin. 3 Bl. Comm. c. 10; 2 Inst.; and Booth's Law of Real Actions. In the assize of novel disseisin, the demandant counted on an actual possession in himself; and for the trespass done to that possession by the disseisin, the damages were given. Hence this action was called a mixed action (Sayer's Law of Damages), because it partook of the nature of a writ of entry so far as it regained the land, and of the nature of a writ of trespass so far as it gave damages. But although the demandant was entitled to damages, it was not necessary to pay him in money. It is enough that he receive something valuable, which will put him in as good a situation as if he had not been disseized; for that is the object of the writ. He may therefore be paid for the profit by improvements. "He who recovers the land shall have the emblements, but the assize recouped the damages because the land was sown." 9 Vin. Abr. tit. "Emblements," 369, cites Brooke, Abr. "Emblements," 11, 24, E 3, 50. "Damages to 40s. found by the assize, and no more, because the land is well sown and the house mended, and so recouped the damages." 8 Vin. Abr. tit. "Discount." In assize the plaintiff recovered the land and no damages,

because the place was well amended by building. 8 Vin. Abr. tit. "Discount." "Disseisin done ad damnum £9, disseizor sows the land which is worth £10; and the assize gave £9 damages; per Cur. they shall be attainted for not recouping the sowing." 8 Vin. Abr. tit. "Discount." "In divers cases one who is in of his own wrong shall recoupe and retain. The disseizor shall recoupe in damages all that he hath expended in amending the houses." Coulter's Case, 5 Coke, 30. In Penrice v. Penrice, a writ of inquiry in dower was quashed because the jury omitted to deduct the chief rents and repairs. Barnes' Notes, Cas. 234.

2. It seems then that in assize of novel disseisin, which was the only action in which damages were given for mesne profits, improvements were recouped, and there can be no difference in this respect between the actions of assize and trespass with continuando. When a man is out of possession he may recover his land at common law by entry or by action. If my ancestor was disseized, I may recover the possession by entry, if that right has not been tolled; but I could have no action for damages, for the same reason that I could get none in the writ of entry. Trespass with continuando does not lie, because there was no former possession in me to which my entry could relate. so as to give me that possession during the interim, upon which the action of trespass with continuando is founded. Liford's Case, 11 Coke, 51. If my ancestor died seized and a stranger abated, I could recover the land by entry; but had no action for damages. Trespass with continuando does not lie against an abater after entry by the heir. 20 Vin. Abr. 463, 464; Bl. Comm., causa qua supra. But if I was myself disseized, I may recover the land by entry, and then sue for damages in trespass with continuando. 11 Coke, 51. The action of trespass is here brought and allowed for the same reason that damages are given in assize of novel disseisin, the trespass done to the actual possession of the disseized. Entry followed by trespass with continuando was just equivalent to the action of assize; and they were alternative remedies for the same injury. Their very near resemblance in many particulars is singular. In assize, "a man shall recover damages for all injury done to the estate itself;" so in trespass with continuando, he may "recover for all and any injury done during the disseisin." 20 Vin. Abr. 464. In assize "he shall recover to the value of the issues of the land." 7 Vin. Abr. 267. And in trespass with continuando "he shall recover the natural and artificial profits." 11 Coke, 51. If it appear in assize that "the trees which the disseizor cut were used in mending the houses, they shall be recouped." 8 Vin. Abr. 557. So in trespass with continuando "if the disseizee hath himself taken any of the corn, grass, or trees, they shall be recouped; for in both

cases, the disseizee has back his property." 11 Coke, 52. At common law the demandant in assize could only recover damages from the disseizor himself and not from his alienee; but the statute of Glocester gives damages against the latter. So at common law the action of trespass with continuando could only be sustained against the disseizor, (1 Hob. 98); but it is certain that since the statute this action has been sustained against the alienee of the disseizor (Cro. Eliz. 540). To conclude the resemblance, Coke says in Liford's Case, "that I shall recover in this action of trespass in the same manner that a disseizee shall recover against his disseizor in assize at common law." Entry, followed by trespass, was the usual remedy when the disseisin was fresh, and assize when it was ancient. 1 Reeve. Eng. Law, 324. Hobart says, "If the disseizee has reëntered and thereby lost his assize, he may have trespass with continuando for the mesne profits." Hob. 98. He may recover the profits in trespass, because he can no longer have assize for them; and clearly therefore he must recover them in the same manner in both actions. If then a recouper of improvements was allowed in one action, it must have been in the other, for they were alternative remedies for the same injury. So far as the assize gave damages, it was in nature of trespass; and the form of the action of trespass is favorable to recoupers, for Coke says, as before mentioned, that if the disseizee "himself take any of the corn or trees, they shall be recouped," and it is a common thing, in an action of trespass, for the ouster of a personal chattel to show that the article has been restored, in order to mitigate damages. It is said in 12 Vin. Abr. tit. "Evidence," 158, "The law is that in trespass for goods taken the plaintiff shall recover the value of them; yet if the plaintiff re-has the goods this may be shown in evidence to mitigate the damages." If I may show that I have carried back the plaintiff's trees. 1 may certainly show that I not only carried them back but also built him a fence with them. If he may show, to increase damages, that when I broke his close, I trampled down his corn, I may show in mitigation of the damage, that I mended his gate. It may be said, therefore, with certainty, that recoupers were and might be made in the action of trespass with continuando, when brought after entry.

3. And they may and should be made in that action when brought after a recovery in ejectment. When a man has recovered, possession of land by a modern action of ejectment, he is precisely situated like a disseizor after entry at common law; that is, he has got his land and no damages. He could get no damages on the ejectment, because the parties were fictitious; and he was obliged to get the possession in that way, because he is prohibited by the statute from making a forcible entry. After having recovered the

possession he proceeds with the old action of trespass, which was formerly brought after an entry. All the recoupers which were formerly admissible in this action ought to be admitted now. There are many strong reasons for it. The recoverer in a modern ejectment must be either a freeholder or a termor. If a freeholder, he ought not to be placed in a better situation, as to the defendant's right of retainer, by the fictions of the court, than he was by the old law; and by the old law the improvements would be recouped in either of the alternative remedies which the plaintiff might elect to pursue. If he be a termor, he should not be placed in a better situation as to this particular by the awarding of the writ of possession than he was before the courts undertook to award that writ. By the old law the plaintiff recovered in ejectment the value of the whole term, but the term itself remained in the hands of the defendant. 3 Bl. Comm. 300. The defendant was safe as to his improvements, because they remained on the land which he retained during the term. But the courts undertook to give back the term specifically to the plaintiff and invented the writ of possession in the time of Henry VII. for that purpose. 3 Bl. Comm. 201; Runnington, Eject. "The writ of ejectment was now licked into the form of a real action" (Goodtitle v. Tombs, 3 Wils. 120), and the damages must have been of course, lowered from the full value of the whole term to the value of the profits generally (3 Wils. 121); and because this action now assumed the form and the effect of a real action, it must also have taken the character of a real action as to the defendant's right of retainer for improvements. Why did the courts of law award the writ of possession? Blackstone and Runnington say, to prevent the plaintiff from going into chancery for a restitution of the land. Now if the courts had not allowed the defendant recouper, he would have been driven into chancery for relief; but they would certainly never have invented a writ to relieve the plaintiff from going into chancery, and drive the defendant there unnecessarily.

CRANCH, Chief Judge (DUCKETT, Circuit Judge, absent). Before the fictitious action of ejectment was devised by the courts, and took the place of real actions, the true action of ejectment was brought only by the termor himself against the actual ejector, and the term itself was not recovered, but only damages to the value of the residue of the term yet to come; but the actual ejector still retained possession of the land; and by this means secured the benefit of all his improvements. When the fictitious action of ejectment was devised, it can scarcely be supposed that the court intended to deprive the defendant of any reasonable benefit which he had before in the old form of action; for "in fictione juris semper aequitas existit." Again, the fictitious action of ejectment was

a substitute for the assize of novel disseisin, the assize of mort d'ancestor, or for an actual entry, so far only as the assize or the entry, restored the disseizee to the actual possession of the land. It did not, like the assize, afford a remedy for the damages sustained by the disseizee by being kept out of possession, or by actual injury done to the land and premises. This defect arose from the circumstance that the parties were fictitious. It required the subsequent action of trespass for the mesne profits, in addition to the fictitious action of ejectment, to make the remedy equivalent to an assize. Where the disseizee regained his possession by reëntry, he was entitled to the action of trespass with a continuando for the mesne profits; and in the assize and in the action of trespass after reëntry, the defendant was permitted to show, in mitigation of damages, that he had sowed the land, or otherwise increased its value by improvements.

THE COURT thinks that the action of trespass for the mesne profits, after a recovery in the fictitious action of ejectment, is strictly analogous to the action of trespass with a continuando after an entry, and to that part of the remedy by assize which gave the defendant his damages, and is accompanied by the same equitable defence.

The opinion of THE COURT, therefore, is, that the improvements mentioned in the case agreed, may be given in evidence in mitigation of damages in the present action.

[See Cases Nos. 5,427, 5,429, and 5,430.]